# EXHIBIT "A"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-61822-CIV-DIMITROULEAS

CECELIA A. HICKS, on behalf of
herself and all others similarly situated,

    Plaintiff,                                         Magistrate Judge Snow

vs.

CLIENT SERVICES, INC.,

    Defendant.
_____/

## ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court upon the Plaintiff Cecilia A. Hicks's Motion for Summary Judgment [DE 66] filed on October 17, 2008. The Court has carefully considered the Motion, the Plaintiff's Memorandum in Support [DE 67], the Plaintiff's Statement of Material Facts [DE 68], the Defendant Client Services, Inc.'s Memorandum in Opposition to Plaintiff's Motion for Summary Judgment [DE 73], the Plaintiff's Reply Memorandum in Support of Plaintiff's Motion for Summary Judgment [DE 81], and the parties' affidavits and exhibits, and is otherwise fully advised in the premises.

### I. BACKGROUND

Plaintiff Cecilia A. Hicks alleges that Defendant Client Services, Inc. violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §1692 *et seq.*, in several communications with the Plaintiff. Specifically, Plaintiff claims that on or about September 7, 2007 and

1

September 21, 2007 the Defendant, a debt collector, left messages[1] on Plaintiff's voice mail that did not disclose the Defendant's identity, status as a debt collector, and purpose of the call as required by §§1692d(6) and 1692e(11). The Second Amended Complaint also states that Defendant left similar messages on other occasions. Count I of Plaintiff's Complaint seeks damages for Defendant's violation of §§1692d(6) and 1692e(11) by allegedly failing to disclose in telephone messages that its identity, and that it was a debt collector attempting to collect a debt. Count II seeks damages for Defendant's alleged violation of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. §227, by using an automatic telephone dialing system to call cellular phones. Plaintiff seeks a declaratory judgment, injunctive relief, statutory damages, and attorney's fees.

On December 11, 2008, this Court certified a class consisting of:

(a) all Florida residents (b) to whom Defendant Client Services, Inc. (CSI) left a telephone message (c) in an attempt to collect a debt incurred for personal, family, or household purposes (d) in which Defendant failed to state it is from a debt collector, or that it was an attempt to collect a debt (e) during the one year period prior to the filing of the complaint in this matter through the date of class certification.

[DE 90]. The Court certified a class for Plaintiff's FDCPA claims, but not for her TCPA claims. On October 17, 2008, prior to Plaintiff's Motion to Certify Class became ripe, Plaintiff filed a

---

[1] The Plaintiff alleges that the content of the September 7 message is:

Hi. This message is for Cecelia Wilson or Willie Hicks. My name is Barbara Norman. My phone number is 1-800-521-3236, extension 3856. This is regarding a personal matter. I need you to call me back. Once again my number is 800-521-3236, extension 3856. Thank you.

(Second Amended Complaint, ¶9). Plaintiff claims the content of the September 21 message is:

This message is for Cecelia Hicks. My name is _____(inaudible) and it is very important that you return my call. The number is 1-800-521-3236 and my extension is 4715.

(Second Amended Complaint, ¶8). Defendant admits making these calls and leaving these messages.

Motion for Summary Judgment. In the Motion for Summary Judgment, Plaintiff argues that Defendant violated the FDCPA by failing to disclose its identity and by failing to state in its initial communication with class members that it was attempting to collect a debt. Plaintiff also argues that Defendant willfully violated the TCPA by using an automatic telephone dialing system to call the Plaintiff's and class members' mobile phone.[2] Defendant argues that the voice mail messages it left were not "communications" under the FDCPA, that there is no evidence that the class members are consumers under the FDCPA, and that there is no evidence that Defendant left the same messages it left for Plaintiff as it did for the class members. As for the TCPA count, Defendant claims that its system was not an "automatic telephone dialing system" under the TCPA, and that Plaintiff has failed to demonstrate that she did not give prior express consent. Finally, Defendant argues that equitable relief is not available under the FDCPA.

## II. DISCUSSION

### A. Motion for Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, see Anderson v. Liberty Lobby, Inc., 477

---

[2] As the Court only certified the class for the FDCPA claim and not the TCPA claim, we discuss the TCPA claim below only as it pertains to the Plaintiff Cecelia Hicks.

U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party, Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). According to the plain language of Federal Rule of Civil Procedure 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson, 477 U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. 242, 249-50 (internal citations omitted). Consideration of a motion for summary judgment, however, "does not lessen the burdens on the non-moving party: the non-moving party still bears the burden of coming forward with sufficient evidence on *each*

4

*element* that must be proven." Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080 (11th Cir. 1990) (emphasis in original).

### B. Violation of the FDCPA

Congress established the FDCPA "eliminate abusive debt collection practices." 15 U.S.C. § 1692. The FDCPA restricts communications from debt collectors to consumers in many different ways. See e.g., § 1692c (restricting, among other things, the time or place when a debt collector may contact a consumer); § 1692d (prohibiting harassing or abusive conduct in connection with the collection of a debt). When a court evaluates whether language is deceptive under the FDCPA, the court should apply an objective standard at the language's tendency "'to mislead the least sophisticated'" consumer, in order to give effect to the FDCPA's purpose of protecting consumers. Jeter v. Credit Bureau, 760 F.2d 1168, 1175 (11th Cir. 1985) (quoting Wright v. Credit Bureau of Ga., Inc., 548 F. Supp. 591, 599 (N.D. Ga. 1982)). Courts may assume, however, that the least sophisticated consumer will "possess a rudimentary amount of information about the world" and will not make "unreasonable misinterpretations." Rivera v. Amalgamated Debt Collection Servs., 462 F. Supp.2d 1223, 1227 (S.D. Fla. 2006) (quotations omitted) (in the context of collection notices).

Although debt collectors are to refrain from mentioning the debt when communicating with third parties, they must indicate to the consumer their identity, that the debt collector is attempting to collect a debt, and that any information obtained would be used for that purpose. §§ 1692d(6), 1692e(11). This warning is sometimes referred to as the "mini-Miranda." E.g., Barrows v. Chase Manhattan Mortgage Corp., 465 F. Supp. 2d 347, 359-60 (D.N.J. 2006).

The Defendant does not dispute that it left the two messages given above on Ms. Hicks's

voice mail. However, Defendant argues that the messages are not communications under the FDCPA. The definition of "communications" in the FDCPA is "the conveying of information regarding a debt directly or indirectly to any person through any medium." § 1692a(2). Courts generally consider pre-recorded messages and voice mail messages from debt collectors to be "communications," even if the messages do not state what the calls are regarding. See e.g., Belin v. Litton Loan Servicing, LP, 2006 U.S. Dist. LEXIS 47953 *12 (M.D. Fla. July 14, 2006) (holding that messages left on the debtor's answering machine were "communications" under the FDCPA); Foti v. NCO Fin. Sys., 424 F. Supp. 2d 643, 655-56 (S.D.N.Y. 2006) (holding that a voice mail message is a "communication" under the FDCPA); Hosseinzadeh v. M.R.S. Assocs., Inc., 387 F. Supp.2d 1104, 1115-16 (C.D. Cal. 2005) (same); but see Biggs v. Credit Collections, Inc., 2007 U.S. Dist. LEXIS 84793 *12-13 (W.D. Okla. Nov. 15, 2007) (ruling that a voice mail message by a debt collector was not a communication because it contained no information regarding a debt).

Defendant relies on Biggs for the contention that voice mail messages are not communications. However, this Court has previously ruled that voice mail messages are communications under the FDCPA. Berg v. Merchs. Ass'n Collection Div., 586 F. Supp. 2d 1336, 1341 (S.D. Fla. 2008). We found that the statutory definition of communications under §1692a(2) to be fairly broad, such that we could not find that the plain language of the statute excluded voice mail messages. Id.

Defendant also argues that the Plaintiff has failed to prove that each class member is a "consumer" under the FDCPA. A consumer under the FDCPA is "any natural person obligated or allegedly obligated to pay any debt", where "debt" is "any obligation or alleged obligation of a

6

consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." §§1692a(3),(5). Defendant contends that Plaintiff has failed to produce any evidence that the collection efforts by the Defendant arose from a consumer debt. Defendant has produced evidence that it generally does not know whether the debts arise commercially or from personal, family, or household expenses. [Affidavit of Donald Funke, DE 74, ¶20]. Plaintiff responds that Defendant's ineffective record keeping should not prevent this Court from finding liability. Plaintiff also argues that proving whether the debts were consumer debts under the FDCPA should be a simple matter.

However ineffective Defendant's record keeping was, the responsibility of producing evidence to leave no genuine issue of material fact lies with the Plaintiff as the movant. Plaintiff argues that any question may be resolved by asking class members to indicate whether the debt was for personal or business purposes. The cases Plaintiff cites as authority only give support for the argument that such a question should not bar class certification. E.g., Wilkerson v. Bowman, 2001 U.S. Dist. LEXIS 4719 *17 (N.D. Ill. March 26, 2001); Bantolina v. Aloha Motors, Inc., 419 F. Supp. 1116, 1122 (D. Haw. 1976); Haynes v. Logan Furniture Mart, Inc., 503 F.2d 1161, 1167 n.4 (7th Cir. 1974). Here, the Plaintiff must produce evidence to show that there is no genuine issue of material fact that the debts are consumer debts, which she has failed to do. Therefore, Plaintiff has failed to establish that she is entitled to summary judgment on her FDCPA claim.

### C. Violation of TCPA

*1. Defendant's Dialing Device is an Automatic Telephone Dialing System under the TCPA*

The TCPA prohibits the use of an "automatic telephone dialing system or an artificial or prerecorded voice" when calling "any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. §227(b)(1)(A). Congress defined "automatic telephone dialing system" as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." §227(a)(1). Congress has charged the FCC with rule-making authority under the TCPA. §227(b)(2). This Court does not have the jurisdiction to review FCC rulings under the TCPA. 28 U.S.C. §2342; 47 U.S.C. §407; U.S. West Communs., Inc. v. Hamilton, 224 F.3d 1049, 1054 (9th Cir. 2000); Leckler v. Cashcall, Inc., 2008 WL 5000528 at *2-3 (N.D. Cal. Nov. 21, 2008).

Plaintiff has alleged that the Defendant has used an automatic telephone dialing system. Defendant has denied using such a device as defined in the TCPA. The Defendant's dialing device calls numbers that are manually entered into it by the Defendant's staff. Defendant describes the device as a "non-predictive, non-sequential, and non-random autodialer" in its responses to interrogatories.

The FCC has issued rulings expanding the definition of "automatic telephone dialing system" to include "predictive dialers", which the FCC defined as "having the capacity to dial numbers without human intervention" and as "'equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls . . . . [i]n most cases, telemarketers program the numbers to be called into the equipment . . .'" FCC, IN THE MATTER OF RULES AND REGULATIONS IMPLEMENTING THE

8

TELEPHONE CONSUMER PROTECTION ACT OF 1991: REQUEST OF ACA INTERNATIONAL FOR CLARIFICATION AND DECLARATORY RULING, 07-232, ¶12, n.23 (2007) ("FCC RUL. 07-232") (quoting and affirming FCC, IN THE MATTER OF RULES AND REGULATIONS IMPLEMENTING THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 03-153, ¶131 (2003) ("2003 TCPA ORDER"). The FCC also stated that the "purpose of the requirement that equipment have the 'capacity to store or produce telephone numbers to be called' is to ensure that the prohibition on autodialed calls not be circumvented" and that to exclude equipment because "it relies on a given set of numbers would lead to an unintended result." 2003 TCPA ORDER, ¶133.

In an earlier Order [DE 90], this Court considered it likely that the Defendant's dialing system would fall under the FCC's expanded definition of automatic telephone dialing system. However, we did not rule on the issue at the time, as it was unnecessary to decide whether we should certify a class for Plaintiff's TCPA claim. We now find that the Defendant's dialing system does fall under the FCC's expanded definition of automatic telephone dialing system.

While Defendant has protested that its calling device is not an "automatic telephone dialing system"[3] and has described it as "non-predictive", the more detailed description its executive gives under deposition shows that it would fall under the type of device the FCC contemplated in its ruling on predictive dialers. Mr. Funke answered affirmatively that once the numbers are entered into the dialer, the device will continue to dial numbers regardless of whether live employees are present, and if a live person answers, it will connect that person with Defendant's employee. [Funke Deposition, 30, 36]. This type of device, which calls a set of

---

[3] Defendant relies chiefly on <u>Satterfield v. Simon & Schuster</u>. 2007 U.S. Dist. LEXIS 46325 (N.D. Cal. 2007). However, that case was before the recent FCC clarification in FCC RUL. 07-232.

numbers without human intervention, falls under the FCC definition of automatic telephone dialing systems.

*2. There is No Genuine Issue of Material Fact as to Whether Defendant Used an Automatic Telephone Dialing System to Call Plaintiff's Cell Phone*

Plaintiff argues that it is entitled to summary judgment on the TCPA claim because Defendant had a policy of calling numbers without checking if they were assigned to cell phones. Defendant argues that the specific calls on September 7, 2009, and September 21, 2009 were manually dialed, and thus do not implicate the TCPA. Defendant also argues that the Plaintiff must demonstrate that she did not give prior express consent. Plaintiff replied that her claims are based on many telephone calls, not only the two that resulted in messages left on her voice mail, and that the only evidence on the record about consent is her deposition testimony that she did not give express consent for Defendant to call her cell phone.

According to evidence Defendant provided, it made numerous calls with its dialing device to Plaintiff's cell phone, as alleged in the Plaintiff's Second Amended Complaint. Defendant's Assistant Vice President of Operations Donald Funke stated that on the account notes an "AID" code indicates that the Defendant called the number with the dialing device. [DE 74-1]. The account notes Defendant provided show dozens of calls made with the code "AID" after it. [DE 74-2]. Plaintiff alleges that 48 calls were made to her cell phone with the dialing device. The evidence Defendant provided supports that number of calls. [DE 74-2]. Although Defendant argues that only two calls were at issue, it has not disputed the total number of calls made to Plaintiff with the dialing device.

The burden of establishing prior express consent is on the Defendant. FCC RUL. 07-232.

Defendant has not produced evidence showing that Plaintiff gave consent to call her cell phone number. The only evidence on the record is the Plaintiff's statement that she did not give consent. [DE 67-1, Declaration of Cecelia Hicks, ¶3].

*3. Treble Damages*

Plaintiff also argues that treble damages are appropriate as Defendant's violations were allegedly willful. According to the TCPA, a court may, "in its discretion, increase the amount of the award to an amount equal to not more than 3 times" than the statutory damages $500 per violation. 47 U.S.C. §227(b)(3). Defendant does not make a specific argument against treble damages. However, from Defendant's arguments against the TCPA claim, we cannot find that there is no genuine issue of material fact that Defendant's violations were willful. Defendant described its dialing device as "non-predictive". It therefore may have felt that the FCC's ruling on predictive dialers did not apply to its dialing device.

*4. Injunctive Relief*

Plaintiff seeks injunctive relief to prevent Defendant from calling her cell phone using an automatic telephone dialing system. The TCPA provides for injunctive relief. 47 U.S.C. §227(b)(3)(A) (a person may bring "an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation"). Defendant's arguments against injunctive relief under the TCPA are essentially that it does not use an automatic telephone dialing system and that Plaintiff did not establish that she did not give prior express consent. As we ruled against the Defendant on both these issues, we find that Plaintiff is entitled to injunctive relief.

### III. Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff Cecilia A. Hicks's Motion for Summary Judgment [DE 66] is hereby **GRANTED in part** with regard to liability for 48 violations under the TCPA, and **DENIED in part** as to her claims for damages under the FDCPA Count I and her claim for treble damages under the TCPA in Count II of her Second Amended Complaint;

2. Defendant is hereby enjoined from using its dialing device to call Plaintiff Cecelia Hicks's cellular phone.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 9th day of June, 2009.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:

Counsel of record