UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 09-61629-Civ-Jordan/McAliley

SANDRA W. FILLICHIO

    Plaintiffs,

v.

M.R.S. ASSOCIATES, INC.

    Defendant.
_____/

## PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff, SANDRA W. FILLICHIO, files her proposed findings of fact and conclusions of law as follows:

## FINDINGS OF FACT

1. The Court has determined that MRS violated the TCPA on 157 occasions. See Order (DE 63) on Ms. Fillichio's Motion for Summary Judgment (DE 24). The Court found the following facts were undisputed:

> In October of 2008, Chase Bank retained MRS Associates, Inc. to collect Sandra Fillichio's past due credit card bill. Chase Bank provided MRS with Ms. Fillichio's home phone number (954-783-####), which was the only telephone number attributed to the credit card account. MRS also obtained other numbers allegedly belonging to Ms. Fillichio through her credit bureau report, including 954-803-####, a number that she asserts (as she testified at her deposition) is her cellular telephone number. Between October of 2008 and March of 2009, MRS placed 157 phone calls by an automated dialing device to Ms. Fillichio at 954-803-####, and left 31 messages, in an effort to collect the past due debt. At the time the calls were made, Ms. Fillichio did not have caller identification on her cellular phone. Additionally, Ms. Fillichio never responded to any of the messages left for

> her, never actually answered the calls made to her by MRS, and did not make any efforts to request that MRS cease making debt collection calls to her alleged cellular phone number.
>
> …
>
> It is undisputed that MRS made 157 calls to 954-803-#### using an automatic telephone dialing system.
>
> …
>
> …MRS has failed to raise a genuine issue of material fact as to whether the number dialed belonged to Ms. Fillichio's cellular phone

See Order on Motion for Summary Judgment (DE 63)

2. The Parties subsequently stipulated to a bench trial. (DE 65).

3. Ms. Fillichio provided her residential landline number to the original creditor, Chase Bank. She did *not* provide her cellular telephone number to Chase Bank. Thus MRS knew from the start that it already had Ms. Fillichio's home number and any additional numbers it obtained from third parties might be a cellular number.

4. MRS was not satisfied with calling Ms. Fillichio's home number and sought other, additional telephone numbers from a third party vendor.

5. MRS purchased Ms. Fillichio's cellular telephone number, 954-803-####, from a third party vendor. The third party vendor did not identify whether the number was a cellular or landline number. MRS made no effort to determine if the number was a cellular or landline.

6. Because the third party vendor was silent as to whether or not 954-803-#### was a cellular or landline telephone, MRS knew from the start that the number might be a cellular number.

7. In addition to purchasing Ms. Fillichio's cellular telephone number from the third party vendor, MRS also purchased other telephone numbers "associated" with Ms. Fillichio. MRS purchased Ms. Fillichio's daughter, Cherise A. Jennette's residential number, Ms. Jennette's ex-husband, Michael Jennette's residential number and Ms. Fillichio's daughter Carolynne Williams former residential number, as well as the telephone numbers of two other individuals who's identity is unknown to Ms. Fillichio. MRS indiscriminately called all of these numbers using its automatic telephone dialing system. MRS made no effort to determine to whom these numbers belonged or if any of these numbers were cellular or landline numbers. MRS placed approximately 300 telephone calls to the various numbers over a period of about 5 months.

8. MRS never asked Ms. Fillichio if the number it was calling was a cellular number and never requested her consent to call her cellular number using its automatic telephone dialing system.

9. MRS never sent Ms. Fillichio a letter asking if any of the numbers it was calling were cellular numbers or asking for her consent to call her cellular number using its automatic telephone dialing system.

10. MRS never made any effort to determine if any number which it called, regarding Ms. Fillichio, using its automatic telephone dialing system was a cellular or landline number.

11. No one ever misinformed MRS by telling it that Ms. Fillichio's cellular number was a landline number.

12. MRS did not call Ms. Fillichio's cellular telephone 157 times using an automatic telephone dialing system by *mistake*.

13. MRS *intended* to call Ms. Fillichio's cellular telephone number 157 times using an automatic telephone dialing system.

14. MRS knew of but did not use a "cell scrub" to determine if any of the numbers it called were cellular telephone numbers or landline numbers.

15. MRS obtained a fee from its client only if it collected money from Ms. Fillichio.

16. MRS had no other business relationship with Ms. Fillichio other than trying to obtain money.

17. MRS simply ignored whether or not the number it called was a cellular telephone number.

## CONCLUSIONS OF LAW

1. MRS willingly or knowingly violated the TCPA.

2. MRS made no effort to determine if the number was a cellular telephone or landline number, failed to inquire of Ms. Fillichio if the number was a cellular number or landline, failed to request Ms. Fillichio's consent to call the number using its automatic telephone dialing system, and failed to use "cell scrub" technology, even though it is expected by the FCC to do so. Accordingly, the Court finds that MRS's violation of the TCPA is knowing or willing. MRS cannot ignore whether the number it calls are cellular telephone numbers then attempt to defend the case by saying that it did not know the number was a cellular telephone number. MRS had the ability to determine it the number

was a cellular telephone number or not and failed to do so. It could have used the telephone number its client gave it for Ms. Fillichio, which was her residential landline telephone number, which it was permitted to call using an automatic telephone dialing system. MRS is legally permitted by the TCPA to call Ms. Fillichio's residential landline using its automatic telephone dialing system. But MRS went further: it sought out additional numbers "associated" with Ms. Fillichio and indiscriminately called all those numbers using its automatic telephone dialing system without regard to whom the number belonged or whether they were cellular or landline telephones. It could have used a "cell scrub" which it is expected to do as ordered by the FCC. It could have sent Ms. Fillichio a letter asking if the number was a cellular or landline and asking for consent to call it using its automatic telephone dialing system. MRS took none of these steps.

    3.    MRS is expected by law to use a "cell scrub" before it places calls using its automatic telephone dialing system:

> We note, however, that where the subscriber has not made the number available to the creditor regarding the debt, we expect debt collectors to be able to utilize the same methods and resources that telemarketers have found adequate to determine which numbers are assigned to wireless carriers,[1] and to comply with the TCPA's prohibition on telephone calls using an autodialer or an artificial or prerecorded voice message to wireless numbers.[2]

FCC RUL. 07-232, III, B, par. 14, Attached as Exhibit "A".

---

[1] *See 2003 TCPA Order*, 18 FCC Rcd at 14117, para. 170. *See also Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Order, 19 FCC Rcd 19215 (2004) (establishing a limited safe harbor period from the prohibition on placing automatic telephone dialing system (autodialed) or prerecorded message calls to wireless numbers when such calls are made to numbers that have been recently ported from wireline service to wireless service).

[2] *See 2003 TCPA Order*, 18 FCC Rcd at 14117, para. 170. *See also* DMA Wireless Number Suppression List at http://preference.the-dma.org/products/wireless.shtml. Neustar also has available a service that provides data on numbers ported from wireline to wireless service on a daily basis. *See* http://www.tcpacompliance.com/. ACA contends that the use of such databases is "inherently deficient" and not a viable solution for ACA members. *See Supplemental Submission* at 29.

4. The Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC RUL. 04-204, (Attached as Exhibit "B") referred to in the footnote to FCC 07-232 relives the caller of liability for calls made to landline numbers that have been "ported" to wireless numbers and requires the caller to check commercially available databases to determine if a particular number is a cellular telephone number. The FCC's 2003 TCPA Order, 18 FCC Rcd 14014, attached as Exhibit "C" further disuses MRS obligation to use commercially available database to ensure violative calls are not made to cellular numbers. MRS simply decided it would not engage in this effort and admits it did not do so because in its opinion it doubts the utility of using such databases.

5. The Court should not reduce per violation amount of damages simply because MRS committed a large number of violations. To do so would give MRS the perverse incentive to violate the law on a wide-scale basis.

6. The Court finds the MRS willing or knowingly violated the TCPA and assesses damages of _____ for each of the 157 violations of the TCPA.

        Respectfully submitted,

        DONALD A. YARBROUGH, ESQ.
        Attorney for Plaintiff
        Post Office Box 11842
        Fort Lauderdale, Florida 33339
        Telephone: (954) 537-2000
        Facsimile: (954) 566-2235
        donyarbrough@mindspring.com

        s/Donald A. Yarbrough
        Donald A. Yarbrough, Esq.

Florida Bar No. 0158658

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 09-61629-Civ-Jordan/McAliley

SANDRA W. FILLICHIO

    Plaintiffs,

v.

M.R.S. ASSOCIATES, INC.

    Defendant.
_____/

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 25, 2010, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                              s/Donald A. Yarbrough
                                              Donald A. Yarbrough, Esq.

## SERVICE LIST

Mr. Ronald S. Canter, Esq.
The Law Offices of Ronald Canter, LLC
Suite 1200
11300 Rockville Pike
Rockville, MD 20852
Telephone: 301-770-7490
Facsimile: 301-770-7493

Via Notices of Electronic Filing generated by CM/ECF